IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORETTA CORTEZ,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN COLVIN,<br><br>    Defendant. | No. C -13-03134 EDL<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE** |

On July 8, 2013, Plaintiff Loretta Cortez filed this suit under 42 U.S.C. § 405(g) seeking judicial review of a decision denying her claims for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. § 400 et seq. Plaintiff subsequently moved for summary judgment, asking the Court to remand the case with instructions to award benefits or, alternatively, for a new hearing. Defendant filed a combined opposition to Plaintiff's motion and cross-motion for summary judgment asking the Court to affirm the Commissioner's decision. Plaintiff filed a reply. Both parties consent to proceeding before a magistrate judge.

For the reasons set forth below, the Court grants Plaintiff's Motion for Summary Judgment, denies Defendant's Motion for Summary Judgment and remands this case for further proceedings.

**Factual Background**

    A.    <u>General Background</u>

Plaintiff was born on February 7, 1950 in Oakland, California. Administrative Record (AR) 87. On the alleged onset date of her disability, she was 60 years old. AR 87. Plaintiff married her husband Gerard Cortez in 1969. AR 85.

    B.    <u>Medical History</u>

Plaintiff made suicide attempts in 1965 and 1971. AR 255. After this time, Plaintiff worked for several years. AR 90.

In 2006, Plaintiff was hospitalized for chest pain at Regional Medical Center of San Jose.

AR 189-225. Dr. Altafi, a cardiologist, performed a cardiac catheterization, and the result was normal. AR 190; 213. Plaintiff was diagnosed with, among other things, an anxiety disorder. AR 190. Subsequently, Plaintiff's family doctor, Dr. Raei, prescribed psychotropic medication for Plaintiff. AR 315.

### 1.   *Laura Andrade, Marriage and Family Therapist*

Plaintiff's primary care physician referred Plaintiff to Laura Andrade, a marriage and family therapist. AR 227. Ms. Andrade first saw Plaintiff on May 7, 2008. AR 227. In the initial treatment plan, Ms. Andrade diagnosed Plaintiff with major depression, panic disorder with agoraphobia, and a generalized anxiety disorder. AR 228. In September 2008, Ms. Andrade requested that Plaintiff be referred to a psychiatrist because a specialist would be in a better position to monitor Plaintiff's reaction to medication. AR 231. In November 2008, Ms. Andrade wrote a letter to Dr. Saad Shakir, the psychiatrist to whom Plaintiff had been referred. AR 232. Ms. Andrade noted that on November 6, 2008, Plaintiff was lethargic. AR 232. Ms. Andrade met with Plaintiff and her husband to discuss the seriousness of Plaintiff's situation, and to formulate a plan for Plaintiff. AR 232. By November 12 and 14, Plaintiff had progressively improved, but she was still having panic attacks. AR 232. Ms. Andrade described Plaintiff's situation as "guarded," but stated that Plaintiff was "on the right track." AR 233.

In July 2009, Ms. Andrade wrote another letter to Dr. Shakir regarding Plaintiff. AR 235. Ms. Andrade reported that during May and June, Plaintiff continued to show lapses in memory and reported episodes of excessive sleepiness, along with frustrations with chronic stressors in her household. AR 235. Plaintiff had cancelled one appointment, and promised to attend an appointment the next week, but did not cancel or attend. AR 235. Plaintiff arrived late to the next weekly appointment and was "extremely agitated," with memory difficulties and inability to focus. AR 235. At that appointment, Plaintiff described her sadness and feelings of loneliness. AR 235. Ms. Andrade described Plaintiff's "deep despair" and her "disdain" for herself. AR 236. When asked whether she had thoughts of suicide, Plaintiff said that "she wants to walk into ocean and not come back." AR 236. Ms. Andrade and Plaintiff decided that Plaintiff should go to the hospital, which she did. AR 236.

In November 2009, Ms. Andrade discharged Plaintiff from further professional service due to Plaintiff's "non-compliance with agreed upon appropriate treatment objectives." AR 238. Ms. Andrade recommended that Plaintiff see another mental health professional because she was still in need of mental health treatment. AR 238.

   *2.    Dr. Saad Shakir, Psychiatrist*

Ms. Andrade referred Plaintiff to Dr. Shakir. AR 315. On October 7, 2008, Dr. Shakir assessed Plaintiff for the first time and diagnosed her with major depression, recurrent, with moderately severe agitation and anxiety symptoms as well as panic disorder with agoraphobia. AR 317. Dr. Shakir's treatment notes in the record begin on June 18, 2009, when he found that Plaintiff's appetite and motivation were good, and her concentration was okay. AR 327. Plaintiff's anxiety was improving, but her energy was a little low and her sleep was poor. AR 327.

On July 24, 2009, Dr. Shakir found that Plaintiff's appetite was pretty good, and her concentration was "so-so." AR 326. Plaintiff reported that her energy and motivation were up and down, and that she was anxious. AR 326. Plaintiff also had poor sleep. AR 236. On July 30, 2009, Dr. Shakir found that Plaintiff's appetite was decreased, and she had no energy or motivation. AR 325. Plaintiff had some nervousness, and her concentration was fair. AR 326. Her sleep was poor, and very interrupted. AR 325.

On August 6, 2009, Plaintiff reported that her appetite was okay, and that her anxiety had improved. AR 324. She reported that her concentration was decreased, and her motivation was low. AR 324. Plaintiff stated that she was sleepy all the time. AR 324. On August 14, 2009, Dr. Shakir noted that Plaintiff's appetite was okay and that her concentration and energy were better. AR 323. Plaintiff's anxiety was controlled with medication that was helping a lot. AR 323. Her motivation and sleep were very good. AR 323. Dr. Shakir noted that Plaintiff was going to have to take care of her ill and elderly mother on her own because Plaintiff's sister had left. AR 323.

On November 20, 2009, Plaintiff reported to Dr. Shakir that she got lost going home and was having crying spells. AR 321. Plaintiff reported that Ms. Andrade is not going to see her any more because Plaintiff was missing appointments. AR 321. Plaintiff reported that she was taking care of her mother, which was getting hard to do. AR 321. Plaintiff was forgetting to give her mother some

3

medications. AR 321. Plaintiff was only eating once per day and not eating healthy food. AR 321. Plaintiff had poor concentration, energy and motivation. AR 321. Plaintiff had some anxiety, and Dr. Shakir noted a question whether Plaintiff had suicidal thoughts. AR 321.

On December 3, 2009, Plaintiff reported that her mother was having heart problems. AR 320. Plaintiff's appetite was low, as were her energy and motivation. AR 320. Plaintiff's concentration was a little improved, and her anxiety was better. AR 320. Plaintiff reported that her sleep was poor because she was staying with her mother. AR 320.

On June 21, 2010, Dr. Shakir noted that Plaintiff's appetite was good, and that her concentration and energy were better. AR 338. Plaintiff's anxiety level was a little better as was her motivation. AR 338. Plaintiff's sleep was good with medication. AR 338. On July 8, 2010, Plaintiff told Dr. Shakir that she had bad days when she would think suicidal thoughts, but tried to distract herself with things or with her granddaughters. AR 337. Plaintiff reported that her small dog was lost and that someone took it. AR 337. Dr. Shakir noted that her pronunciation of words had changed. AR 337. On July 29, 2009, Plaintiff reported that her appetite was okay, but that her concentration and motivation were low. AR 336. Plaintiff stated that her sleep was very good, but that she had anxiety. AR 336.

On January 11, 2011, Dr. Shakir wrote a letter noting that Plaintiff was under his care, and that he recently saw her on January 10, 2011 for an interim evaluation. AR 369. Dr. Shakir stated that he saw Plaintiff an average of once per month, and that he was managing her treatment and medications. AR 369. Dr. Shakir stated that it was his concern that: "in spite of multiple treatment options and multiple medications, Loretta continues to be deeply depressed and unable to function with cognitive difficulties, anxiety, depression and difficulty with motivation." AR 369. Dr. Shakir noted that Plaintiff had forgetfulness at times, and in his medical opinion, "her depression continues to be moderately severe in spite of multiple medications." AR 369. He concluded that: "In spite of her motivation to get well, family support, regular psychotherapy, and medication trials, she continues to be disabled, and I predict that unless there is a dramatic change in her depression, she will be permanently disabled." AR 369.

On March 2, 2011, Dr. Shakir completed a Mental Residual Functional Capacity

4

Questionnaire for Plaintiff. AR 371. Among other things, he stated that Plaintiff was unable to work and that her prognosis was guarded. AR 371-72. He noted several symptoms on the check box form, and noted that Plaintiff was generally unable to meet competitive work standards with respect to many of the mental abilities and aptitudes needed to do unskilled, semiskilled and skilled work. AR 373-75. Dr. Shakir explained that she was seriously limited but not precluded from interacting appropriately with the general public and adhering to the basic standards of cleanliness and neatness. AR 376. Plaintiff was unable to meet competitive work standards for maintaining socially appropriate behavior, and using public transportation. AR 376. She would have no useful ability to function in traveling to unfamiliar places. AR 376. Dr. Shakir noted that Plaintiff had high anxiety, problems with memory and difficulty with focus. AR 376. He estimated that Plaintiff would be absent from work about four days per month on average given her symptoms. AR 376. Dr. Shakir stated that Plaintiff's impairment would last at least twelve months, and that she is not a malingerer. AR 377.

On January 18, 2012, in response to the ALJ's comments at the hearing, Dr. Shakir completed another Mental Residual Functional Capacity Questionnaire. AR 420. The January 2012 form was the same as the March 2011 form, except that it gave the alleged onset date of December 3, 2009, which was different than the onset date given in the March 3, 2011 Questionnaire. AR 420. Dr. Shakir explained that he changed the onset date because he originally thought that the symptoms were severe and his patient was working despite the limitations, but now he confirmed that Plaintiff stopped working on December 3, 2009. AR 420. The

*3.    Dr. Erin Choi, Neuropsychologist*

At Dr. Shakir's request, on December 1, 2009, Dr. Choi conducted an evaluation for diagnostic clarification and for assessment of Plaintiff's cognitive abilities. AR 239. Dr. Choi found that on neuropsychological testing, Plaintiff displayed some variable functioning across multiple domains, but did not meet the criteria for dementia or a memory disorder. AR 242. Dr. Choi found that Plaintiff may have an underlying learning disorder in reading and possibly other areas. AR 242. Dr. Choi noted that Plaintiff's performance on measures of attention and concentration was in the low average range, and she showed a tendency to become easily distracted

5

in the middle of testing. AR 242. Dr. Choi stated that her distractibility likely interferes with optimal memory functioning. AR 242. Dr. Choi concluded that Plaintiff showed prominent signs of Major Depressive Disorder, along with the presence of Anxiety and Dysthymic Disorders. AR 242. Plaintiff showed some signs of schizoid and borderline traits, but did not necessarily meet the full criteria for a personality disorder. AR 242.

Dr. Choi diagnosed Plaintiff with major depressive disorder and panic disorder, with schizoid and borderline traits. AR 242. Dr. Choi recommended that Plaintiff be reassured that her cognitive abilities are generally intact, although she may have moments of less than optimal cognitive functioning. AR 242. Her distractibility and loss of memory function were attributable to her severely depressed mood and anxiety levels. AR 242-43.

*4.   Dr. Janine Marinos*

On September 14, 2010, Dr. Janine Marinos conducted a consultative psychological evaluation of Plaintiff. AR 343. Dr. Marinos examined Plaintiff and concluded that Plaintiff had a depressive disorder and was malingering. AR 343. Dr. Marinos found that although Plaintiff may be depressed, it was questionable whether she had a true bipolar disorder. AR 344. Dr. Marinos noted that Plaintiff did extremely poorly on all tests of cognitive function. AR 344.

Dr. Marinos concluded that although Plaintiff may have some difficulty maintaining concentration due to depressed mood, she likely had the capacity to understand, remember, and carry out simple instructions and interact appropriately with others, should she be motivated to do so. AR 344. Dr. Marinos also noted that Plaintiff was likely also able to handle simple monetary transactions. AR 344.

*5.   State agency physicians*

The record contains the opinions of two state agency psychiatric consultants, Dr. K. Loomis and Dr. E. Murillo. On September 29, 2010, Dr. Loomis reviewed Plaintiff's medical record and identified an affective disorder, which he found to be non-severe because Plaintiff had only mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, concentration, persistence and pace, and had no episodes of decompensation of extended duration. AR 353. On January 4, 2011, Dr. Murillo confirmed Dr. Loomis' assessment that she had no severe

6

mental impairments. AR 368.

**Procedural History**

On April 14, 2010, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on December 3, 2009. AR 1. Plaintiff's claims were denied on October 10, 2010. AR 63. Plaintiff's claims were denied on reconsideration on January 19, 2011. AR 68. On February 7, 2011, Plaintiff requested a hearing. AR 76. Administrative Law Judge T. Patrick Hannon held a hearing on January 5, 2012, at which Plaintiff appeared and was represented by counsel, Angelina Valle. AR 53-59. A vocational expert testified. Id. On April 3, 2012, the ALJ issued a decision denying disability benefits to Plaintiff. AR 13-22. The ALJ's decision became the final decision of the Commissioner on May 17, 2013, when the Appeals Council denied Plaintiff's request for review. AR 1-3.

**ALJ Hearing**

Plaintiff did not testify at the hearing. The primary issue at the hearing was the ALJ's concern that Plaintiff's counsel needed to get further documentation from the treating physician as to Plaintiff's alleged onset date. AR 55-57. When the ALJ asked about physical impairments, Plaintiff's counsel confirmed that this case involved the mental impairment only. AR 57.

Vocational expert Ronald Morrell testified very briefly at the hearing. The ALJ asked Mr. Morrell if Plaintiff's past relevant work was at the sedentary level. AR 58. Mr. Morrell responded that two jobs in Plaintiff's past relevant work (child day care work and a manufacturing assembly job) were at the light level. Id. One job in Plaintiff's past relevant work was at the medium level, that is, her caregiver work. AR 59. Mr. Morrell stated that his testimony was consistent with the Dictionary of Occupational Titles. AR 59.

**ALJ Decision**

On April 3, 2012, the ALJ concluded that Plaintiff was not disabled and issued a written decision. AR 13-22. The ALJ described the five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. 404 § 1520(a).

    1.    <u>Steps One and Two of the Sequential Evaluation</u>

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act

through December 31, 2014.  AR 13.  He also found that Plaintiff had not engaged in substantial gainful activity since December 3, 2009, the alleged onset date.  AR 15.

The ALJ found that Plaintiff had several severe impairments: obesity, hypothyroidism and hyperlipidemia.  AR 15.  These impairments had more than a minimal effect on Plaintiff's ability to do basic work activities.  AR 15.  The ALJ found that Plaintiff's medically determinable mental impairments of depression, anxiety, and bipolar disorder considered singly and in combination, did not cause more than a minimal limitation on Plaintiff's ability to perform basic menial work activities and therefore were not severe.  AR 15.

The ALJ noted that Plaintiff alleged that her bipolar disorder, depression and panic attacks prevented her from working.  AR 15.  The ALJ rejected the Third Party Function Report completed by Plaintiff's husband because it was not given under oath and was no more than "a parroting of the subjective complaints already testified to and reported by claimant."  AR 15-16.  The ALJ also rejected as not credible the statements made in a letter from Plaintiff's pastor to the extent they were inconsistent with the ALJ's determination.  AR 16.

The ALJ noted that Plaintiff had a history of mental health treatment with Dr. Saad Shakir, a therapist and psychiatrist.  AR 16.  The ALJ, however, pointed to a treatment note from November 16, 2009 in which another therapist, Laura Andrade, discharged Plaintiff from further professional service "due to non-compliance with agreed upon appropriate treatment objectives."  AR 16; 238.  From this November 2009 letter, the ALJ concluded that Plaintiff had a "possible unwillingness to do what is necessary to improve her condition."  AR 16.

The ALJ noted that subsequently, on January 28, 2010, Plaintiff was admitted to El Camino Hospital for expressing suicidal thoughts, and she was diagnosed with major depressive disorder.  AR 16.  She was discharged two days later.  AR 16.

The ALJ concluded that Plaintiff's monthly appointments with Dr. Shakir did not indicate severe symptoms.  AR 16.  The ALJ noted that on December 10, 2009, another doctor, Dr. Erin Choi, diagnosed Plaintiff with a major depressive disorder and panic disorder.  AR 16; 242.  The ALJ noted, however, a treatment note from Dr. Shakir on June 21, 2010 showed that Plaintiff's appetite was good, her concentration was better, and her sleep was good with medication.  AR 16;

1  307. On August 25, 2010, Dr. Shakir noted that Plaintiff's anxiety was better, although her energy
2  was a little low and her motivation was fair. AR 16; 359. On December 13, 2010, Dr. Shakir noted
3  that Plaintiff's anxiety had increased, and that her concentration, energy, motivation and sleep were
4  poor. AR 16; 361. On that day, Dr. Shakir also noted that Plaintiff's mother and mother-in-law had
5  recently died. Id. The ALJ notes that this was the last treatment note, and concluded that Dr.
6  Shakir's notes were inconsistent with severe mental impairments. AR 16.

7  Dr. Shakir completed two Medical Residual Functional Capacity Questionnaire forms in
8  2011, which the ALJ rejected. AR 16; 371; 420. The questionnaire dated March 2011 indicates an
9  onset date of October 6, 2008, while Plaintiff was working. AR 377. The ALJ had raised this issue
10 at the hearing, and asked counsel to get a revised onset date from Dr. Shakir. Dr. Shakir provided a
11 second questionnaire in which he changed the onset date to December 3, 2009. AR 427. Dr. Shakir
12 stated that: "I am changing the onset date because originally I thought the symptoms were that
13 severe and my patient was working despite the limitations. Now, I have confirmed that she stopped
14 working on December 3, 2009. I therefore amend the onset date to December 3, 2009." AR 420.
15 The ALJ found that Dr. Shakir's explanation for changing the date was insufficient. AR 16. The
16 ALJ rejected these Medical Residual Functional Capacity Questionnaires, stating that they appeared
17 to have been completed as an accommodation to Plaintiff and were conclusory, and found that they
18 had no probative value because the objective evidence did not support the medical conclusions. AR
19 16.

20 The ALJ also considered and rejected the disability statement by Dr. Shakir dated January
21 10, 2011. AR 16; 369. In that statement, which was written to facilitate Plaintiff's social security
22 benefits application, Dr. Shakir opined that Plaintiff's depression was moderately severe and that
23 unless there was a dramatic change in her depression, she would be permanently disabled. AR 369.
24 The ALJ rejected this opinion as having no probative value because it was not supported by the
25 objective evidence and inconsistent with the record. AR 17. The ALJ also stated that the letter
26 "demonstrates a lack of understanding of social security disability programs and evidentiary
27 requirements. . . ." AR 17.

28 The ALJ found that the remaining medical opinions regarding Plaintiff did not support severe

9

mental impairments. Based on her September 14, 2010 psychological evaluation of Plaintiff, Dr. Marinos concluded that Plaintiff had a depressive disorder and was malingering. AR 343. The ALJ found that this opinion was consistent with the medical record as a whole, but ultimately did not give great weight to Dr. Marinos' opinion because her assessed functional limitations were based on an examination where Plaintiff did not put forth maximal effort. AR 17.

The ALJ found that the opinions of the state agency psychiatric consultants, Dr. K. Loomis and Dr. E. Murillo, supported the finding that Plaintiff's mental impairments were not severe. On September 29, 2010, Dr. Loomis reviewed Plaintiff's medical record and identified an affective disorder, which he found to be non-severe because Plaintiff had only mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, concentration, persistence and pace, and had no episodes of decompensation of extended duration. AR 17; 353. On reconsideration, on January 4, 2011, Dr. Murillo confirmed Dr. Loomis' assessment that there were no severe mental impairments. AR 17; 368. The ALJ gave great weight to the opinions of these non-examining state agency medical consultants. AR 17.

Based on all of this medical evidence, the ALJ found that Plaintiff's medically determinable impairments were nonsevere because they caused mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, no difficulties with regard to concentration, persistence or pace, and have not resulted in any episodes of decompensation of extended duration. AR 18.

2. Step Three of the Sequential Evaluation

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medially equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart B, Appendix 1. AR 18. The ALJ also noted there is no medical listing for obesity. AR 18.

3. Step Four of the Sequential Evaluation

The ALJ found that Plaintiff had the residual functional capacity to perform the full range of medium work. AR 18. This finding was based on Plaintiff's alleged physical impairments, which are not at issue in this motion. The ALJ found that Plaintiff's obesity was a severe impairment, and that Plaintiff's hyperlipidemia and hypothyroidism do not cause any disabling symptoms. AR 19. Thus, the ALJ found that the treatment records were consistent with a medium residual functional

10

capacity. AR 20.

On September 13, 2011, Dr. Roger Wagner, certified in internal medicine, conducted a complete consultative evaluation of Plaintiff, during which her chief complaints were hypothyroidism and having a slightly enlarged heart. AR 20. Dr. Wagner found that Plaintiff was on medication for her hypothyroidism and was doing well. AR 20; 381. Dr. Wagner also diagnosed Plaintiff with an enlarged heart. AR 20; 381. Dr. Wagner concluded that Plaintiff could perform medium range work with the exceptions that she could not climb or balance on ladders or scaffolds, and she could not work around rights or heavy machinery given her history of dizziness. AR 20; 382. The ALJ gave Dr. Wagner's opinion great weight. AR 20.

The ALJ also found that the opinion of the non-examining state agency medical consultant, Dr. Susan Lee, supported the finding that Plaintiff's physical impairments do not render her disabled. AR 20. On August 11, 2010, Dr. Lee reviewed Plaintiff's file and found her impairments to be nonsevere. AR 20; 341. The ALJ gave Dr. Lee's opinion great weight. AR 20.

The ALJ noted that despite her impairments, Plaintiff has engaged in a somewhat normal level of daily activity and social interaction. AR 20. She did light cooking, light cleaning, shopping, and walking for exercise. AR 20. Plaintiff reported that she did not have trouble with personal care, and that she was able to do household chores. AR 20-21. Plaintiff is able to drive a car, shop, pay bills, handle a savings account and use a checkbook. AR 21. Plaintiff talks with family and goes to church. AR 21. A social security claims representative filled out a check box form stating that Plaintiff did not have any observed difficulty with hearing, reading, breathing, understanding, coherency, concentrating, talking, sitting, standing, walking, seeing, using hands, or writing. AR 21; 107.

4.  Step Five of the Sequential Evaluation

In light of the ALJ's findings in steps one through four, he concluded that Plaintiff was capable of performing past relevant work as an assembler, childcare leader, and home attendant. AR 21. The AlJ stated that this finding was based at least in part on the vocational expert's testimony at the hearing. AR 21. The ALJ stated that the vocational expert was present at the hearing, and that the vocational expert heard Plaintiff's testimony. However, Plaintiff did not testify at the hearing.

11

AR 21; 53-59.

**Legal Standard**

      A.      <u>Standard of Review</u>

According to 42 U.S.C. § 405(g), the Court's jurisdiction is limited to determining whether the findings of fact in the ALJ's decision are supported by substantial evidence or were premised on legal error. 42 U.S.C. § 405(g); see Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is relevant evidence that a reasonable person might accept as adequate in support of a conclusion; it is "more than a mere scintilla but less than a preponderance." Id.; see also Richardson v. Perales, 402 U.S. 389, 401 (1971); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir.1997).

To determine whether the ALJ's decision is supported by substantial evidence, courts review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's decision. See Sandgathe, 108 F.3d at 980 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995.) If the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). The trier of fact, not the reviewing court, must resolve conflicting evidence, and if the evidence can support either outcome, the reviewing court may not substitute its judgment for the judgment of the ALJ. Id.; see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992). An ALJ's decision will not be reversed for harmless error. Id.; see also Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991).

      B.      <u>Definition and Determination of Disability</u>

In order to qualify for disability insurance benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA utilizes a five-step sequential evaluation process in making a determination of disability. 20 C.F.R. § 404.1520; see Reddick, 157 F.3d 715, 721. If the SSA finds that the claimant is either disabled or not disabled at a step, then the SSA makes the determination and does not go on to the next step; if the determination cannot be made, then the SSA moves on to the next step. 20 C.F.R. § 404.1520.

First, the SSA looks to the claimant's work activity, if any; if the claimant is engaging in substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(I). Second, the SSA considers the severity of impairments: claimant must show that he has a severe medically determinable physical or mental impairment (or combination of severe impairments) which has which has lasted or is expected to last twelve months or end in death. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the SSA considers whether a claimant's impairments meet or equal a listing in 20 C.F.R. Part 404 Appendix 1. If so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the SSA considers the claimant's residual functional capacity ("RFC") and past relevant work; if the claimant can still engage in past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth, the SSA considers whether, in light of the claimant's RFC and age, education, and work experience, the claimant is able to make an adjustment to another occupation in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c). The claimant has the initial burden of proving disability. Reddick, 157 F.3d at 721. It is only if a claimant establishes an inability to perform her prior work at step four does the burden shift to the SSA to show that the claimant can perform other substantial work that exists in the national economy at step five. Id.

### C.   Reversal or Remand

If a court finds that the ALJ erred or that his findings are not supported by substantial evidence, the court must decide whether to award benefits or remand the case for further proceedings. Evidence should be credited in favor of the claimant and an immediate award of benefits directed if the following three factors are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (citing Smolen, 80 F.2d at 1292). The decision of the district court whether to remand for further development of the administrative record or to direct an immediate award of benefits is a fact-bound determination subject only to review for abuse of discretion. Id. at 1777; see also Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981) (holding that

a remand is necessary where the ALJ failed to make adequate findings but that a reversal is appropriate where the record thoroughly developed and a rehearing would simply delay receipt of benefits).

**Discussion**

Plaintiff seeks an order remanding this case with instructions to award benefits. Alternatively, Plaintiff seeks a remand for a new administrative hearing. Plaintiff argues that: (1) the ALJ failed to include all of Plaintiff's severe impairments; and (2) the ALJ failed to give proper weight to the treating physician's opinion. Plaintiff has not provided any information about impairments that were not considered by the ALJ. The crux of the motion is the second issue about whether the ALJ failed to adequately consider the opinion of Plaintiff's treating physicians.

**Opinions of Treating Physicians and State Agency Consultants**

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff (treating physicians), (2) those who examined but did not treat the plaintiff (examining physicians), and (3) those who did not directly treat or examine the plaintiff (nonexamining physicians). See Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995). A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician. Id.

The opinions of treating physicians are generally afforded more weight than the opinions of nontreating physicians because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. See Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir.1996). If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight. See 20 C.F.R. § 416.927(c)(2); 20 C.F.R. § 404.1527(d)(2) (same).

The ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002); accord Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190,

14

1195 (9th Cir.2004); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir.2012) (ALJ may reject check-off reports that do not contain an explanation of basis for conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for individualized medical opinions over check-off reports). Because 20 C.F.R. § 416.927 contains guidelines for weighing opinions from "acceptable medical sources" but none for weighing "other sources," an ALJ may accord opinions from "other sources" less weight. Gomez v. Chater, 74 F.3d 967, 970–71 (9th Cir.1996). However, at least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. See Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir.1991). "Clear and convincing" reasons are required to reject the treating doctor's ultimate conclusions. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.1988). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983).

In determining disability, the ALJ "must develop the record and interpret the medical evidence." Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir.2003). Nonetheless, it remains the plaintiff's burden to produce evidence in support of her disability claims. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir.2001). Moreover, the ALJ's duty to develop the record is triggered only when there is "ambiguous evidence or when the record is insufficient to allow for proper evaluation of the evidence." Id. at 459–60.

Here, Plaintiff argues that there is an abundance of evidence illustrating the severity of Plaintiff's depression. Plaintiff points to the opinions of Ms. Andrade, who referred Plaintiff to Dr. Shakir because she felt that treatment by a psychiatrist was advisable, and of Dr. Shakir. Dr. Shakir's treatment notes indicate major depression with moderately severe agitation and anxiety symptoms. See, e.g., AR 317. Later, Dr. Shakir stated that Plaintiff is deeply depressed and unable to function. AR 369. Dr. Shakir referred Plaintiff to Dr. Choi, who found major depressive disorder and panic disorder after extensive psychological testing. AR 242. Plaintiff was hospitalized in July 2009 and in January 2010. AR 251; 257. Dr. Shakir prescribed multiple medications, and at the time of the hearing, Dr. Shakir had been treating Plaintiff for three and one half years.

15

Despite Dr. Shakir's extensive treatment of Plaintiff, the ALJ gave no weight to his opinion because the ALJ found that the opinion was unsupported by the record. Instead, the ALJ gave significant weight to Dr. Marinos' opinion, who found malingering, even though Dr. Marinos only examined Plaintiff once. It appears that the battery of tests given by Dr. Choi was far more comprehensive than the tests given by Dr. Marinos, and while Dr. Choi's opinion is mentioned in the opinion, the ALJ does not mention Dr. Choi by name or indicate whether he rejected or accepted that opinion. AR 16; see 20 C.F.R. § 404.1527(c) ("(c) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."). Although the ALJ stated that Dr. Marinos' opinion is consistent with the medical record as a whole, it is contrary to Dr. Shakir's extensive treatment notes, Dr. Choi's opinion and Ms. Andrade's treatment notes. Further, Dr. Shakir's opinions are entitled to more weight as a treating physician than a mere examiner like Dr. Marinos.

Defendant argues that the ALJ correctly concluded that Plaintiff's mental impairments did not cause more than minimal limitation in her ability to perform basic menial work activities, noting that the record shows that Plaintiff worked for years with depression, and that prior to the alleged onset date, she received mental health treatment and prescription medication, but continued working. Thus, Defendant argues that Plaintiff has failed to show that her impairment was severe. However, Dr. Shakir's treatment notes and opinion that she is unable to work due to her mental health disability provide evidence of the severity of Plaintiff's condition.

Defendant argues that the ALJ reasonably considered Plaintiff's history of non-compliance with treatment and malingering. See 20 C.F.R. § 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits."). In a September 6, 2008 letter, Ms. Andrade noted that Plaintiff "abruptly stopped taking" her medication, so she referred Plaintiff to a psychiatrist, and Plaintiff then began treatment with Dr. Shakir. AR 231. Ms. Andrade also stated in that letter that Plaintiff stopped taking her medication because Plaintiff felt it was ineffective and she did not like

16

the way the medications made her feel. AR 231. On November 16, 2009, Ms. Andrade discharged Plaintiff from treatment due to "non-compliance with agreed upon appropriate treatment options." AR 238. The record does not establish that the ALJ considered any explanation for Plaintiff's noncompliance with Ms. Andrade's treatment regimen. Noncompliance may not necessarily be held against a mental health patient where the mental health condition undermines a patient's ability or willingness to comply. See, e.g., Frankhauser v. Barnhart, 403 F. Supp. 2d 261, 278 (W.D. N.Y. 2005) ("Courts considering whether a good reason supports a claimant's failure to comply with prescribed treatment have recognized that psychological and emotional difficulties may deprive a claimant of 'the rationality to decide whether to continue treatment or medication.'"); Sharp v. Bowen, 705 F. Supp. 1111, 1124 (W.D. Penn. 1989) ("We hold that in determining whether a claimant with a mental impairment has reasonably refused treatment, the question is whether he has justifiably refused in light of his psychological, social or other individual circumstances. . . . An individual with a severe mental impairment quite likely lacks the capacity to be 'reasonable.' In addition, that individual may not have the same capacity to assess the risks and benefits of prescribed treatment as someone who is not affected by such an impairment."). Moreover, there is no evidence that Plaintiff failed to take prescribed medication or was non-compliant once she began treatment with Dr. Shakir, who prescribed numerous medications during his treatment of her from October 2008 through at least January 2012.

While Dr. Marinos, who examined Plaintiff once, found that Plaintiff was malingering, her treating doctor strongly disagreed, and even Dr. Marinos acknowledged that Plaintiff may be depressed and that she had some difficulty in maintaining concentration due to a depressed mood. AR 344. Dr. Marinos' opinion does not trump Plaintiff's treating physicians' opinions that Plaintiff had serious and disabling symptoms, where the ALJ has not provided sufficient reasons to disregard the treating physicians' opinions. Although Plaintiff's mental health symptoms fluctuated to some extent over time, her long term treating doctor found her disabled and the ALJ's opinion was not supported by substantial evidence. While the ALJ cited a purported lack of treatment by Dr. Shakir after December 2010 as a reason to discount his opinions, Dr. Shakir stated in January 2011 and even later in December 2011 that he was still treating Plaintiff. AR 369; 418.

17

     Significantly, in his December 2011 letter, Dr. Shakir stated that he was appalled by Dr. Marinos' opinion that Plaintiff was a malingerer. AR 418. In particular, Dr. Shakir noted the extensive testing that Plaintiff had undergone by Dr. Choi and stated that:

> I personally have been following Ms. Cortez since October 7, 2008 and treating her. Furthermore, in addition to my 30+ years of experience as a neuropsychiatrist, she had seen multiple providers in my office through the years we have known her for counseling and psychological services. More importantly, she had a full battery of psychological testing on December 1, 2009 by Erin Choi, Ph.D., a neuropsychologist through my office, who has extensive experience in testing. She underwent testing as well as a clinical interview, review of available records, the WAIS-V with IV similarities, digit span, arithmetic, symbol search including subtests Wexler Memory Scale-III, information orientation, local memory 1 and 2, wordless 1 and 2, phases 1 and 2, and visual reproduction 1 and 2 subtests. She did the wide range achievements tests IV, reading subtests, trail-making tests part A and B, Rey Osterrieth Complex Figure Tests, Wisconsin Card Scoring Test (WCST), Million Clinical Multiaxial Inventory, and all of those tests were confirming her clinical diagnosis of major depression, recurrent, panic disorder, personality issues, etc.

AR 418. The ALJ did not address Dr. Shakir's December 2011 letter.

     Defendant argues that the ALJ reasonably gave controlling weight to the medical opinions from three non-treating agency physicians in finding that Plaintiff's impairments were not severe. As stated above, the opinion of the only one of the three who examined her (Dr. Marinos) was contrary to Dr. Choi's opinion, and the ALJ did not fully address that contradiction and did not provide sufficient reasons to credit Dr. Marinos' opinion over Dr. Choi's, much less Dr. Shakir's. Also, neither of the other two examined Plaintiff before providing their opinions, so their opinions are entitled to even less weight, and the ALJ did not provide sufficient reasons to accept their opinions over Plaintiff's treating physician's opinion. The state agency physicians' opinions are not consistent with the rest of the medical record, including lengthy treatment notes from Dr. Shakir.

     Defendant argues that the ALJ reasonably disregarded Dr. Shakir's opinions because his 2011 Medical Residual Functional Capacity Questionnaires were form reports with check boxes. However, Dr. Shakir also wrote in some explanations of Plaintiff's condition on the forms. Moreover, as noted above, he took extensive treatment notes and provided a detailed letter supporting his opinion in December 2011. The ALJ has not provided sufficient reasons for disregarding Dr. Shakir's 2011 reports.

     Finally, Defendant also argues that the ALJ reasonably concluded that Plaintiff's depression was not severe because it did not meet the twelve month durational requirement. However, the ALJ

1 did not discuss the twelve month durational requirement in his opinion as a reason to find Plaintiff
2 not disabled.

**Conclusion**

As set forth above, the ALJ did not provide specific and legitimate reasons for rejecting Dr. Shakir's opinions and Ms. Andrade's opinions, and did not provide sufficient reasons for rejecting Dr. Choi's opinion. Further, Plaintiff did not testify at the hearing. Accordingly, Plaintiff's motion for summary judgment is granted and Defendant's motion for summary judgment is denied.

If a court finds that the ALJ's findings are not supported by substantial evidence, the court must decide whether to award benefits or remand the case for further proceedings. Evidence should be credited in favor of the claimant and an immediate award of benefits directed if the following three factors are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (citing Smolen, 80 F.2d at 1292). Here, as set forth above, the ALJ failed to provide sufficient reasons for rejecting the opinions of Plaintiff's treating physicians. Because there are no outstanding issues that must be resolved before a determination of disability can be made and it is clear that Plaintiff would be found disabled if her treating physician's opinion and supporting diagnosis by the extensive psychological testing he ordered were credited, the ALJ's decision is reversed and this matter is remanded for payment of benefits.

**IT IS SO ORDERED.**

Dated: April 7, 2014

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge

19